[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 02, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-16542

_____

D. C. Docket No. 99-00444-CV-4-RH

GERLING GLOBAL REINSURANCE
CORPORATION OF AMERICA, d.b.a.
GERLING GLOBAL REINSURANCE
CORPORATION-U.S. BRANCH, , GERLING
GLOBAL LIFE REINSURANCE COMPANY, etc., et al.,

Plaintiffs-Appellees,

versus

TOM GALLAGHER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(October 2, 2001)**

Before CARNES and MARCUS, Circuit Judges, and PROPST*, District Judge.

_____

*Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama,
sitting by designation.

MARCUS, Circuit Judge:

Defendant Tom Gallagher (the "Commissioner"), in his capacity as the Insurance Commissioner of the State of Florida, appeals the district court's entry of summary judgment against him on the Plaintiffs' challenge to the constitutionality of Florida's Holocaust Victims Insurance Act, Fla. Stat. § 626.9543 (the "Act"). Plaintiffs -- several insurers operating in Florida with corporate affiliations to German insurers who may have issued policies to Holocaust victims prior to 1945 -- brought this suit alleging that the Act violates the Due Process Clause and other provisions of the U.S. Constitution. The district court agreed that the Act violates Due Process because it effectively regulates a subject and transactions that have an insufficient connection with Florida. The court therefore granted summary judgment in Plaintiffs' favor, denied the Commissioner's cross-motion for summary judgment, and entered a narrow injunction relieving the Plaintiffs of any consequences stemming from their refusal to comply with certain disclosure obligations created by the Act and imposed via subpoenas. The Commissioner now appeals, disputing the district court's legal analysis. Because we agree that this Act, as applied to these Plaintiffs on these facts, violates Due Process, we affirm the district court, and uphold the limited remedy provided by that court. We do not address the Plaintiffs' other objections to the Act, and do not decide whether

2

other provisions of the Florida Insurance Code may in some circumstances authorize this kind of inquiry into the affairs of an insurer's affiliate.

I.

This action concerns Florida's Holocaust Victims Insurance Act, which took effect in 1998. The sole explicit purpose of the Act is to ensure that "potential and actual insurance claims of Holocaust victims and their heirs and beneficiaries be expeditiously identified and properly paid and that Holocaust victims and their families receive appropriate assistance in the filing and payment of their rightful claims." Fla. Stat. § 626.9543(2). To that end, the Act includes a number of provisions affecting the rights of German insurers and their German insureds under policies issued in Germany between 1920 and 1945.[1]

The Act contains two key sets of provisions. The first set (the "reporting provisions") imposes a reporting requirement upon insurers doing business in Florida ("Florida insurers"). Specifically,

> [a]ny insurer doing business in this state shall have an affirmative duty to ascertain to the extent possible and report to the department within 90 days after the effective date of this section and annually thereafter all efforts made and results of such efforts to ascertain:

---

[1]The Act does not limit its scope to German insurers or policies. It applies to any insurers that issued policies to Holocaust victims. For ease of reference, insurance policies issued between 1920 and 1945 to Holocaust victims shall be identified as "Holocaust-era policies."

3

(a) Any legal relationship with an international insurer that issued an insurance policy to a Holocaust victim between 1920 and 1945, inclusive.

(b) The number and total value of such policies.

(c) Any claim filed by a Holocaust victim, his or her beneficiary, heir, or descendant that has been paid, denied payment, or is pending.

(d) Attempts made by the insurer to locate the beneficiaries of any such policies for which no claim of benefits has been made.

(e) An explanation of any denial or pending payment of a claim to a Holocaust victim, his or her beneficiary, heir, or descendant.

Id. § 626.9543(7). As the text explains, a Florida insurer has a duty to report not only regarding its own Holocaust-era policies, but also regarding the policies of companies with which it has or had any "legal relationship." The statute defines "legal relationship" as "any parent, subsidiary, or affiliated company with an insurer doing business in this state." Id. § 626.9543(3).[2] Violation of the reporting requirement, or any other requirement imposed by the Act, subjects an insurer to "an administrative penalty of $1,000 per day for each day such violation continues." Id. § 626.9543(9).

---

[2]This definition is concededly not limited to the Florida insurer's corporate "alter egos." Cf. The Moorings at Aberdeen Homeowners Ass'n v. UDC Homes, Inc., 673 So. 2d 981, 982 (Fla. Dist. Ct. App. 1996) (alter ego relationship alleged where one corporation "exerted its control over" a related "sham" corporation and "caused the separate corporate identity of [the sham corporation] to be ignored").

4

The second set of provisions (the "claims recovery provisions"), as interpreted by the Commissioner in an administrative rule, requires Florida insurers to pay all valid Holocaust-era policy claims asserted against them as well as all valid claims asserted against any of their parents, subsidiaries, or corporate affiliates. Fla. Stat. § 626.9543(5); Fla. Admin. Code 4-137.010(6). The Act requires payment of all claims established under "a reasonable, not unduly restrictive, standard of proof." Fla. Stat. § 626.9543(5)(b). The Act also declares inapplicable to Holocaust-era policy claims any foreign statute of limitations, and creates a new ten-year statute of limitations for the presentation of these claims. Id. § 626.9543(6).

In addition, the Act creates a private cause of action for individuals harmed by a violation of the Act, and authorizes the recovery of treble damages, costs, and attorney's fees. Id. § 626.9543(10). This provision establishes a remedy for any person alleging non-payment on a Holocaust-era policy by any insurer doing business in Florida or by any parent, subsidiary, or corporate affiliate of such an insurer. Accordingly, a Florida insurer could be liable for treble damages, attorney's fees, and costs based upon the non-payment of a Holocaust-era policy by a separate foreign company that it does not control, but with which it happens to be affiliated.

5

II.

Plaintiffs are six related insurers licensed to do business in Florida: Gerling Global Reinsurance Corp. of America f/k/a Constitution Reinsurance, a New York company; Gerling Global Reinsurance -- U.S. Branch, a German company; Gerling Global Life Reinsurance, a California company; Gerling Global Life Insurance, a Canadian company; Gerling America Insurance, a New York company; and Constitution Insurance f/k/a Gerling Global, a New York company. There is no suggestion that any Plaintiff issued any policies to Holocaust victims prior to 1945; only one of the Plaintiffs was in existence, and that insurer did not become affiliated with the Gerling group until much later.

Although not corporate alter egos and apparently not direct parents or subsidiaries, the six Plaintiffs are affiliates of two German insurers, Gerling-Konzern Lebensversicherungs-AG ("GKL") and Gerling-Konzern Allgemeine Versicherungs-AG ("GKA"), who issued Holocaust-era policies in Germany. GKL and GKA are German companies based in Cologne; they are not registered to do business in Florida, they have no offices or employees in the state, and there is no evidence that these German insurers have any independent contacts with Florida other than to the extent that some current Holocaust-era policyholders or their beneficiaries may currently reside in the state. There is no record evidence

6

that the Plaintiffs have possession, custody, or "control" -- in the legal or practical sense -- over the records or activities of GKL or GKA.

The trigger for this lawsuit was a set of subpoenas sent, under authority of the Act and the implementing Rule, to five of the Plaintiffs by the Florida Insurance Commissioner. The subpoenas are expansive, calling upon the Plaintiffs to produce an array of records regarding any Holocaust-era policies issued not only by the Plaintiffs themselves, but also by their German affiliates. The Plaintiffs had previously advised the Florida Department of Insurance that none of them had issued any policy that was in force in Europe between 1920 and 1945, and that they could not provide information regarding GKL and GKA because they had no direct knowledge of the activities of their German affiliates. The Plaintiffs did attach copies of reports voluntarily supplied by GKL and GKA addressing some of the matters covered by the Act's reporting requirement; both GKL and GKA reported that, to the extent relevant records remain, there is no indication of any unpaid claims relating to the Holocaust era.

The Commissioner thought those responses inadequate. In the subpoenas, therefore, he sought a wide range of documents, including copies of policies, reinsurance contracts, checks, and financial statements, covering essentially all of the German affiliates' European transactions during a twenty-five year span early

last century. The subpoenas also defined the subpoenaed companies as including as well "any and all other entities that . . . now have or have in the past had any organizational, managerial, or operational connection with [them], including but not limited to as a parent company or as a subsidiary." The Commissioner then issued a press release asserting that the subpoenas were issued because the Plaintiffs had not fully complied with the Act.

Rather than contest the subpoenas, the Plaintiffs filed this lawsuit for declaratory and injunctive relief. The complaint seeks relief under 42 U.S.C. § 1983 based on the Act's alleged unconstitutionality. The Plaintiffs eventually moved for summary judgment in their favor; the Commissioner cross-moved for summary judgment in his favor.[3]

---

[3]The parties disagree about whether the Plaintiffs raised an as-applied challenge in their summary judgment motion. Although there is no question that the Plaintiffs were pursuing an as-applied challenge in the lawsuit along with a facial challenge, it appears that the Plaintiffs' summary judgment motion referred only to their facial challenge. Nevertheless, for a variety of reasons, we will consider the Plaintiffs' as-applied arguments in resolving this appeal. First, it is well settled that "[w]hen reviewing a grant of summary judgment, the court of appeals may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993). Second, the Commissioner himself, by seeking summary judgment in his own right on all issues raised by the complaint, effectively injected the as-applied issue into the summary judgment mix. Third, the Plaintiffs' entitlement to relief on the limited as-applied argument they have advanced before us is sufficiently clear that no purpose would be served by a remand at this stage. Finally, the Commissioner cannot persuasively claim any prejudice from considering Plaintiffs' as-applied argument now. The Commissioner had every opportunity to request further discovery before the district court ruled on the summary judgment motions, yet he chose not to do so. The Commissioner also chose not to contest Plaintiffs' evidence asserting a lack of control over the documents sought in the subpoenas. We therefore shall address the Plaintiffs' as-applied challenge to the Act. Notably, although the district court's order did not specify

In an order dated November 11, 2000, the district court granted the Plaintiffs' motion and denied the Commissioner's cross-motion. 123 F. Supp. 2d 1298 (N.D. Fla. 2000). The court did so on the basis of one of Plaintiffs' asserted objections: denial of Due Process. Relying on our opinion in American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 221 F.3d 1211 (11th Cir. 2000), the court initially explained that the Act "is subject to review under the jurisdictional principles of the Due Process Clause and may be enforced only to the extent consistent with those principles." 123 F. Supp. 2d at 1302. The district court then found that the Act reached too far by effectively attempting to regulate the activities of insurers with no contact with Florida. According to the court, "[t]he insurance contracts at issue were entered in Germany between German parties under German law. They addressed German events. Any breach of the contracts occurred in Germany. The parties to the contracts had no connection with Florida. The events governed by the contracts had no connection with Florida. The grounds for exercising jurisdiction over these parties or these events in Florida are exactly none." Id.

---

whether it was considering an as-applied challenge, the limited relief that it fashioned was consistent with such a challenge.

The district court made two other important observations in its opinion. First, it assumed for purposes of its ruling that the Plaintiffs were subsidiaries of GKL and GKA; it explained, however, that under well-settled law "the German parents -- and their German transactions -- are not subject to the jurisdiction of the State of Florida merely because the subsidiaries do business here." Id. at 1303 (citing Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 128, 129 (11th Cir. 2000)). The court emphasized that even though the subpoenas were directed toward the Florida insurers, "it is not plaintiffs' transactions that the Commissioner is investigating. The transactions at issue were instead entered solely by German corporations of which plaintiffs are subsidiaries." 123 F. Supp. 2d at 1303.

Second, the district court observed that there was no effort by the Commissioner to justify the Act as necessary to facilitate the Department's regulation of the Florida insurers. According to the court:

> It is true that in the course of regulating Florida insurers, the Commissioner can and does properly consider events occurring elsewhere. Thus, for example, if an insurer that does business in Florida commits fraud in another state or country, the Commissioner may properly consider whether that renders the insurer unfit to engage in the business of insurance in Florida. There has been no assertion, however, that any plaintiff had anything to do with any Holocaust-era policies or with any failure to pay claims under any such policies. Commendably, the Commissioner has made no effort to justify the Holocaust Victims Insurance Act or his actions thereunder simply as a means of determining whether plaintiffs themselves or their officers are fit to engage in the business of insurance in Florida. Rather, the

10

Commissioner has acknowledged, as the Act's statement of purpose makes clear, that the ultimate goal is to bring about payment of amounts due to Holocaust victims and their families. See Transcript of Summary Judgment Hearing [] (asserting that core of Act is facilitating access of Florida Holocaust victims to information that would allow them to perfect claims). And the Commissioner has said he seeks information regarding amounts due to Florida residents only, not regarding amounts owed to victims still in Germany or elsewhere, see id. [], thus making clear that the goal is not simply to address the current fitness of corporate officers (who presumably would be equally unfit whether they failed to pay valid claims in Germany, Florida or elsewhere) but, as the statute expressly states, to facilitate the payment of claims.

Id. at 1303 n.9.

As relief, the district court directed entry of a judgment in Plaintiffs' favor and also issued an injunction. The court's remedy did not sweep broadly, providing no express declaratory relief and enjoining the Commissioner only from taking any action against the Plaintiffs "as a result of their failure to provide information or evidence to defendant relating to Holocaust-era policies issued by insurers other than plaintiffs (whether or not such insurers were or are affiliates of plaintiffs) outside of the State of Florida to insureds who were, at the time of issuance of the policies, not Florida citizens or residents." Id. at 1304. In other words, the district court did not declare the entire Act unconstitutional, and basically treated Plaintiffs' argument as simply a narrow as-applied attack on the reporting provisions to the extent those provisions exceed constitutional limits on

11

Florida's legislative jurisdiction. The Commissioner has appealed the district court's order; the Plaintiffs have not cross-appealed.

III.

There is no dispute about the proper standard of review of the district court's order granting Plaintiffs' motion for summary judgment and denying the Commissioner's cross-motion. We review a district court's grant of summary judgment de novo, applying the same legal standards used by the district court. See, e.g., Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion" and "'all reasonable doubts about the facts [are] resolved in favor of the non-movant.'" See Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (quoting Clemons v. Dougherty County, 684 F.2d 1365, 1368-69 (11th Cir. 1982)).

IV.

Plaintiffs contend that the Act is unconstitutional on its face and as applied. They assert primarily that the Act violates the Due Process Clause of the Fourteenth Amendment because (1) the Florida Legislature lacked "legislative

12

jurisdiction" to regulate, in effect, the affairs of the Plaintiffs' German affiliates; (2) the Act compels the Plaintiffs or their affiliates to violate German law; and (3) the act is arbitrary and irrational as applied. Plaintiffs also contend that the Act violates the dormant Commerce Clause by impermissibly regulating out-of-state commerce; violates Congress's power to control international commerce and the national government's foreign affairs power under Zschernig v. Miller, 389 U.S. 429, 88 S. Ct. 664 (1968); would authorize an unreasonable search and seizure in violation of the Fourth Amendment; and constitutes a bill of attainder.[4] The Commissioner disputes all of these contentions. In addition, the Commissioner contends that the validity of the Act's claims recovery provisions cannot be addressed in this proceeding because there is no "case or controversy" regarding the applicability of these provisions to the Plaintiffs and because these provisions are severable from the Act's reporting provisions.

The relief ordered by the district court was limited to the Act's reporting provisions to the extent they affect these six Plaintiffs. The Plaintiffs have not

---

[4]The United States has intervened on behalf of the Plaintiffs, arguing that the district court's ruling should be affirmed because the Act violates the dormant Commerce Clause as well as the foreign affairs power. The Government particularly emphasizes the disruptive effect that the Act (in its view) will have on the operation of carefully-crafted international initiatives to provide insurance benefits to Holocaust victims and their survivors. The Government has not taken a position on Plaintiffs' Due Process objections. We do not imply any view on the merits of the Government's arguments, because it is unnecessary to consider them.

cross-appealed from that limited relief. Accordingly, because the relief ordered by the district court concerned only the reporting requirements, and in light of our holding in this opinion, we have no occasion to consider the Act's claims recovery provisions, and therefore do not offer any view on the constitutionality of those provisions, whether there currently exists a case or controversy regarding those provisions, or whether those provisions are severable from the reporting provisions. The only issue before us, and the <u>only</u> issue which we resolve today, is extremely narrow, and concerns solely the validity of the Act's reporting provisions in connection with the subpoenas served on these Plaintiffs by the Commissioner.

Turning to that issue, the district court's conclusion that the reporting provisions are unconstitutional was based entirely on the concept of legislative Due Process. The court found, as Plaintiffs contend, that there is an insufficient connection between the State of Florida and the subject matter of the Act insofar as the Act calls upon Florida insurers such as the Plaintiffs to produce and compile information regarding transactions between non-Florida residents that occurred entirely outside Florida. Plaintiffs argue that the reporting provisions, to the extent they concern the Plaintiffs' German affiliates and European transactions, exceed the constitutionally permissible regulatory authority of the Florida Legislature.

14

The Plaintiffs also contend that the provisions are invalid as applied because, regardless of whether the Plaintiffs have a "legal relationship" with their German affiliates, they do not have possession, custody or control over the sought-after materials, and where such control is lacking they cannot constitutionally be compelled to produce the materials.

The concept of substantive Due Process limits on a state legislature's jurisdiction was recently considered by this Court in American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 221 F.3d 1211 (11th Cir. 2000). That case involved a county ordinance regulating persons, wherever located, who solicited or assisted with soliciting charitable contributions within the county. The plaintiffs -- who assisted charities in sending national mailings addressed to the general public -- brought suit challenging the ordinance on several constitutional grounds, including denial of Due Process. Plaintiffs argued that they could not constitutionally be subject to the ordinance because they had insufficient contacts with the county and did not purposefully avail themselves of any benefits in the county. The district court granted summary judgment against the plaintiffs.

On appeal, we affirmed the district court with respect to the plaintiffs' facial challenge, but reversed and remanded on plaintiffs' as-applied Due Process challenge. We held that the county's application of the ordinance to the plaintiffs

"may violate the Due Process Clause of the Fourteenth Amendment." Id. at 1214; see also id. at 1217. In the course of our opinion, we framed the Due Process issue in these terms:

> A state's legislative jurisdiction is circumscribed by the Due Process Clause: There must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction. The inquiry into whether sufficient legislative jurisdiction exists is similar to that explored in determining sufficient minimum contacts for the purposes of assessing whether a court can exercise personal jurisdiction consistent with due process, or whether a court can apply a state's own law under choice-of-law analysis to a case consistent with due process.

> To determine legislative jurisdiction, that is, to confirm that the application of the County's regulations to Plaintiffs does not offend due process, we look to choice-of-law and personal jurisdiction analyses. When choice-of-law issues arise in court, to apply a state's substantive law in accordance with due process, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair. And, when a court is considering its personal jurisdiction, the exercise of jurisdiction does not offend due process if the pertinent party has certain minimum contacts with the jurisdiction such that the maintenance of the action does not offend traditional notions of fair play and substantial justice. Applying these standards to the question before us now, we ask whether sufficient contacts exist between the Plaintiffs and the County, creating state interests such that it would not be fundamentally unfair to subject the Plaintiffs to the County's registration requirements. Therefore, a minimum contacts inquiry is necessary for determining whether the County's exercise of legislative jurisdiction, in this case, offends due process. The regulated party must have performed some act by which it purposefully avails itself of the privilege of conducting activities within the County.

16

Id. at 1216 (citations, internal quotation marks, and brackets omitted).

In Adventure Communications v. Kentucky Registry of Election Finance, 191 F.3d 429 (4th Cir. 1999), a decision cited by American Charities, the Fourth Circuit elaborated on the limits on legislative jurisdiction:

> [T]here is a difference between jurisdiction to adjudicate or judicial jurisdiction on the one hand, and legislative jurisdiction on the other. The former concerns the power of a state to resolve a particular dispute through its court system, while the latter involves "the authority of a state to make its law applicable to persons or activities." Legislative jurisdiction is a core concept "to determining the extraterritorial reach of a statute." To put it succinctly: Legislative jurisdiction refers to both "the lawmaking power of a state" and "the power of a state to apply its laws to any given set of facts," whereas adjudicative jurisdiction "is the power of a state to try a particular action in its courts."
>
> Nevertheless, the concepts are closely related [and there] is substantial overlap in the analysis employed in determining the presence of each kind of jurisdiction. . . . In exploring the due process limits on the legislative power of a state, the Supreme Court has employed language similar to that used in personal jurisdiction matters, explaining that "[t]here must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction." . . . In sum, although not identical, judicial and legislative jurisdiction are determined pursuant to like guidelines.

Id. at 435-36 (citations omitted).

The Plaintiffs argue that Florida's Holocaust Victim's Insurance Act violates legislative Due Process constraints to the extent it calls for information about, and thereby effectively seeks to regulate, European insurance transactions. Plaintiffs

17

contend that (1) the Holocaust-era policies were issued outside of Florida, (2) to persons not then residing in Florida, (3) regarding persons or property outside of Florida, and (4) are governed by German law. The Commissioner responds that the Act does not apply to every insurer whether or not that insurer has contacts with Florida; rather, technically speaking, the reporting obligation applies only to insurers, such as these Plaintiffs, who do business in Florida. The Commissioner contends that Florida insurers obviously have sufficient contacts with the State of Florida to permit the Florida Legislature to inquire into their affairs.

On this record, we agree with Plaintiffs' narrow argument that the statute's reporting provisions, as applied, violate legislative Due Process constraints. The relevant question is whether there exists "some minimal contact between a State and the regulated subject." American Charities, 221 F.3d at 1216 (emphasis added). In other words, we inquire not only into the contacts between the regulated party and the state, but also into the contacts between the regulated subject matter and the state. Id.; see also Allstate Ins. Co. v. Hague, 449 U.S. 302, 310-11, 101 S. Ct. 633, 639 (1981) (addressing whether Due Process limited a state court's ability to apply its state law to a disputed insurance transaction and stating "the proposition that if a State has only an insignificant contact with the parties and the

occurrence or transaction, application of its law is unconstitutional") (emphasis added).

The concept of Due Process constraints on a state legislature's ability to regulate subject matters and transactions beyond the state's boundaries, while perhaps infrequently litigated in those terms, is not new. It has been invoked in controversies regarding a state's power to tax transactions occurring in whole or part outside its borders. See Quill Corp. v. North Dakota, 504 U.S. 298, 306, 112 S. Ct. 1904, 1910 (1992) (explaining that "[t]he Due Process Clause 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax'") (citation omitted). It has also been invoked in choice of law disputes, as it was in Hague, 449 U.S. at 302, 110 S. Ct. at 639, and earlier decisions.

In Home Insurance Co. v. Dick, 281 U.S. 397, 50 S. Ct. 338 (1930), for example, the Supreme Court held that a Texas statute could not be applied in litigation arising out of a subject matter with no connection to Texas. That case involved a disagreement over the terms of an insurance policy which had been issued in Mexico, by a Mexican insurer, to a Mexican citizen, covering a Mexican risk. The policy was subsequently assigned to the plaintiff, who was domiciled in Mexico. The policy restricted coverage to losses occurring in certain Mexican

19

waters, and the loss triggering the litigation occurred in those waters. The plaintiff nevertheless brought suit in Texas against a New York reinsurer. Neither the Mexican insurer nor the New York reinsurer had any connection to Texas.

The Texas courts applied a Texas statute to void the insurance contract's limitation clause, but the Supreme Court reversed, holding that the statute as applied violated Due Process. As the Court explained:

> The Texas statute as here construed and applied deprives the garnishees of property without due process of law. A state may, of course, prohibit and declare invalid the making of certain contracts within its borders. Ordinarily, it may prohibit performance within its borders, even of contracts validly made elsewhere, if they are required to be performed within the state and their performance would violate its laws. But, in the case at bar, nothing in any way relating to the policy sued on, or to the contracts of reinsurance, was ever done or required to be done in Texas. All acts relating to the making of the policy were done in Mexico. All in relation to the making of the contracts of reinsurance were done there or in New York. . . . Texas was therefore without power to affect the terms of contracts so made. Its attempt to impose a greater obligation than that agreed upon and to seize property in payment of the imposed obligation violates the guaranty against deprivation of property without due process of law.

Id. at 407-08, 50 S. Ct. at 341.

Likewise in Watson v. Employers Liability Assurance Corp., 348 U.S. 66, 75 S. Ct. 166 (1954), the Court invoked legislative Due Process principles to evaluate a Louisiana insurance statute that purported to invalidate certain provisions in insurance contracts entered out-of-state. Although the Court

20

eventually concluded that there were sufficient contacts between Louisiana and the regulated subject matter to justify application of the state law on the facts before it, the Court emphasized again "the due process principle that a state is without power to exercise 'extra territorial jurisdiction,' that is, to regulate and control activities wholly beyond its boundaries." Id. at 70, 75 S. Ct. at 169. Simply put, as these cases show, there must be at least some minimal contact between a state and the regulated subject matter or transaction before the state can, consistent with the requirements of Due Process, exercise legislative jurisdiction.

The subject of the Florida Legislature's concern in the Holocaust Victims Insurance Act is Holocaust-era insurance policies and the payment of claims still due under those policies. While there may be a connection between the State of Florida and that subject to the extent it relates directly to the activities of Florida insurers, there is virtually no connection between the State of Florida and that subject to the extent it concerns insurance transactions involving Plaintiffs' German affiliates that took place years ago in Germany, among German residents, under German law, relating to persons, property, and events in Germany. Significantly, the reporting provisions are not on their face limited to information regarding policies that allegedly may be payable to current Florida residents.

Nor is there any dispute that Plaintiffs' German affiliates do not conduct business in Florida and have not otherwise purposefully availed themselves of benefits provided by Florida. See American Charities, 221 F.3d at 1216 ("The regulated party must have performed some act by which it 'purposefully avails itself of the privilege of conducting activities within the [state.]'") (citation omitted). The reporting provisions pertain to, and as a practical matter unquestionably seek to regulate, a subject matter -- the German affiliates' payment or non-payment of Holocaust-era policy claims -- with no jurisdictionally-significant relationship to Florida. The reporting provisions violate Due Process to that extent, regardless of whether there are minimum contacts between the State of Florida and these particular Plaintiffs, the (nominally) regulated parties.[5]

The purpose of the Act underscores why we must look not only at whether the parties regulated by the Act have contacts with Florida, but also and more importantly here at whether the subject about which this Act seeks information has a sufficient nexus to Florida. In the Act itself the Legislature states its purpose as ensuring that "potential and actual insurance claims of Holocaust victims and their

---

[5]The Commissioner cites United States v. Morton Salt Co., 338 U.S. 632, 70 S. Ct. 357 (1950) and other cases for the proposition that the jurisdiction of an administrative agency is greater than that of a court. The cases cited by the Commissioner do not sweep so broadly or alter the Due Process inquiry we must undertake; at best, they establish that an investigating agency may in some instances have powers to gather information broader than those available to courts.

22

heirs and beneficiaries be expeditiously identified and properly paid and that Holocaust victims and their families receive appropriate assistance in the filing and payment of their rightful claims." Fla. Stat. § 626.9543(2). The express purpose of the Act, while important, clearly goes far beyond regulating the activities of insurers with contacts to Florida.

The Commissioner attempts to avoid that fact by arguing that the purpose of the reporting requirement is fundamentally to regulate Florida insurers, as opposed to their European affiliates. The Commissioner asserts that the Legislature acted pursuant to its legitimate interest in seeing that insurers doing business in Florida "pay just claims." But that rationale plainly does not justify imposing on Florida insurers intrusive and burdensome demands for information about the payment of Holocaust-related claims by insurers not doing business in Florida who concededly lack any independent contacts with Florida.[6]

---

[6]In a supplemental brief served on the eve of oral argument, the Commissioner argued that legislative jurisdiction exists, under principles applied in the personal jurisdiction context, because the unlawful failure of foreign insurers to pay Holocaust-era claims has caused direct effects in Florida and because denials of benefits or claims information have been made to current Florida residents. No record evidence supports those contentions with regard to these Plaintiffs. Moreover, as Plaintiffs point out (in an argument the Commissioner does not controvert), case law undermines the Commissioner's implicit assumption that a post-transaction change of residence by policy claimants or their beneficiaries may create a jurisdictionally-significant contact. See, e.g., McCluney v. Jos. Schlitz Brewing Co., 649 F.2d 578, 583 (8th Cir. 1981) (citing Hague and John Hancock Mut. Life Ins. Co. v. Yates, 299 U.S. 178, 57 S. Ct. 129 (1936)); cf. Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); Rambo v. American Southern Ins. Co., 839 F.2d

23

The Commissioner also contends that production of information regarding potential Holocaust-era claims against a Florida insurer's affiliates is necessary to confirm the claims payment practices, solvency, and "good character" of the Florida insurer.[7] The Commissioner makes this contention even though the General Counsel of the Department of Insurance squarely articulated to the district court at the summary judgment hearing the Commissioner's view that "[t]he purpose of the [Act] is to make sure that Florida citizens, who are potential beneficiaries [under these policies], have the maximum ability to have the documentation to receive the redress they are entitled to." Transcript of Hrg., Mar. 3, 2000, at 43.

The Commissioner's position in this appeal regarding the purpose of the Act cannot be squared with the Legislature's own unequivocal statement of its purpose.

---

1415, 1420 (10th Cir. 1988) (plaintiffs' change of residence after disputed insurance policy was issued and the claim arose insufficient to support personal jurisdiction in plaintiffs' new state). The Commissioner's arguments, on this record, are unpersuasive.

[7]Plaintiffs maintain that this justification was never offered below. The Commissioner insists that he argued this justification in his summary judgment papers, but having reviewed the record it is clear that such a justification was not advanced in a meaningful way. Notably, there is no evidence in this record that the Plaintiffs would suffer adverse financial consequences (sufficiently material to affect their ability to pay ordinary Florida claimants) as a result of any remaining Holocaust-era liabilities on the part of foreign insurers with which they merely have some indirect "legal relationship." Nor is there any evidence of a connection between the current claims-handling practices of these Plaintiffs in Florida and their affiliates' payment or non-payment of Holocaust-era claims. All of these considerations weigh against the Commissioner's position on appeal.

The sole express purpose of the Holocaust Victims Insurance Act does not demonstrate a concern with the good character, solvency, or present payment practices of Florida insurers; indeed, the Legislature's inclusion of the claims recovery provisions in the same statute itself belies any suggestion that the reporting provisions are really intended to protect ordinary policyholders by monitoring the exposure and financial sufficiency of Florida insurers. Rather, as quoted above, the Legislature described the purpose of the Act as ensuring that "potential and actual insurance claims of Holocaust victims and their heirs and beneficiaries be expeditiously identified and properly paid and that Holocaust victims and their families receive appropriate assistance in the filing and payment of their rightful claims." Fla. Stat. § 626.9543(2).

We have often emphasized in other contexts that the focal point for determining a legislature's purpose in enacting a particular statute must be the plain language of the statute itself. See, e.g., Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1527 (11th Cir. 1993) ("Inquiry into legislative purpose begins with interpreting the law itself."). The express purpose of the Act reaches well beyond determining the fitness and potential financial liabilities of Florida insurers; indeed, it has little or nothing to do with that subject. We are unwilling to ignore the Florida Legislature's clear statutory statement of

purpose in favor of the Commissioner's litigating position (which the Legislature did not endorse in § 626.9543), and the Commissioner offers us no case law or persuasive authority upon which we might do so.

We do not mean to say that the Commissioner is necessarily without authority to investigate and obtain records regarding the practices of affiliates of Florida insurers. On the contrary, separate provisions of the Florida Insurance Code may well give the Commissioner authority to conduct far-reaching inquiries into the affairs of a Florida insurer's affiliates in order to determine whether the Florida insurer is fit to do business in the state. For example, Fla. Stat. § 624.316 directs the Commissioner to examine "the affairs, transactions, accounts, records, and assets" of Florida insurers, and advises that as part of this process the Commissioner may also examine "the affairs . . . and records relating directly or indirectly to the insurer and of the assets of the insurer's managing general agents and controlling or controlled person." Fla. Stat. § 624.316(1)(a). The statute further provides that these examinations may be conducted whenever warranted "for the protection of the policyholders and in the public interest," and may encompass past events "that affect[] the present financial condition of the insurer." Id.

26

We offer no view as to whether these provisions (which the Commissioner does not even invoke) might have authorized the subpoenas served by the Commissioner in this case; nor do we offer any view regarding the constitutionality of invoking those provisions in this context. Certainly these provisions fit more closely with the purpose now asserted by the Commissioner, and that fact may well affect the Due Process analysis. But the critical point is that these subpoenas were issued in furtherance of an investigation under the Holocaust Victims Insurance Act, and that Act is not concerned with the financial stability or fitness of insurers doing business in Florida; it plainly is designed to facilitate the payment of Holocaust-era policy claims.

In short, the district court correctly reasoned that, to the extent the Act calls for the production of information by these Plaintiffs regarding Holocaust-era policies issued outside Florida by German entities having only some corporate affiliation with them and no other contacts to Florida, it violates Due Process limits on legislative jurisdiction. The Act's reporting provisions violate Due Process as applied to these Plaintiffs on these facts. We therefore uphold the district court's entry of summary judgment in Plaintiffs' favor and leave in place the limited injunction that it issued against the Commissioner. We do not, and need not, address the Plaintiffs' other arguments for declaring the Act unconstitutional, and

do not, as explained above, consider the Act's claims recovery provisions, Plaintiffs' entitlement to any relief beyond that ordered by the district court, or the Commissioner's ability to obtain this information pursuant to other provisions of the Florida Insurance Code.

**AFFIRMED.**