[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12773
_____

D.C. Docket No. 1:12-cv-00366-CG-C


BRENT JACOBY,

Plaintiff-Appellant,

versus

BALDWIN COUNTY, et al.,

Defendants,

SHERIFF HUEY MACK,
DALE BYRNE,
MR. CARR,
MR. KEARSE,
MR. BOYINGTON, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(November 7, 2016)

Before ED CARNES, Chief Judge, JORDAN, Circuit Judge, and LAMBERTH,[*] District Judge.

PER CURIAM:

Brent Jacoby appeals the district court's grant of summary judgment in favor of Sheriff Huey Mack, Corporal Kent Carr, and Officers Joshua Keers, John Rowell, and Mark Boyington on his 42 U.S.C. § 1983 claims for retaliation and excessive force.[1]

I.

Jacoby's claims are set forth in his verified complaint. After he filed that complaint, the magistrate judge ordered the defendants to file a special report addressing the allegations in the complaint. The defendants filed their special report, along with supporting affidavits, contending that Jacoby's claims were without merit. Jacoby filed a response to that special report, repeating the same facts that he had set forth in his verified complaint and he filed an affidavit in which he stated that everything in his response was true. The magistrate judge converted the defendants' special report into a motion for summary judgment and

---

[*] Honorable Royce C. Lamberth, United States District Judge for the District of Columbia, sitting by designation.

[1] During the proceedings in the district court, defendant Dale Byrne died and a suggestion of death was filed, but Jacoby failed to substitute Byrne's estate, and he now acknowledges that neither Byrne nor his estate is a party to this appeal. Jacoby has abandoned his appeal of the grant of summary judgment to the defendants on his § 1983 claim alleging due process violations related to disciplinary hearings. He has also abandoned as moot a claim for injunctive relief.

gave Jacoby notice of his right to file any additional response and evidence in opposition to that motion. He filed a statement that he had no further evidentiary submissions in opposition to summary judgment. The magistrate judge issued a report recommending that the motion be granted. After de novo review, the district court adopted the report and recommendation in its entirety and granted summary judgment in the defendants' favor. This is Jacoby's appeal. The following facts are taken from Jacoby's verified complaint — which may be treated as an affidavit at summary judgment — and, to the extent that Jacoby has not disputed their assertions, from the defendants' affidavits.

## A.

Jacoby's claims are based on events that allegedly occurred at the Baldwin County Sheriff's Corrections Center (BCCC), where he was incarcerated as a pretrial detainee beginning in late October 2011. When he was not in disciplinary segregation, Jacoby spent his first few months in general population, but on February 22, 2012 he was reclassified and transferred to high maximum security, which the parties refer to as "high max." He asserts that Carr transferred him there because he had filed grievances and a lawsuit,[2] though he does not say why he has drawn that conclusion. Carr, BCCC's classification officer, asserted in an affidavit that he transferred Jacoby to high max for four reasons. He had threatened to kill

---

[2] That earlier lawsuit raised claims otherwise unrelated to the present case.

an officer, he had requested protective custody because of enemies in general population, and he had a history of refusing to cooperate with officers as well as a history of hiding contraband.  Of those four reasons, Jacoby denies only that he threatened to kill an officer.  He does not refute or even address the validity of the three other reasons Carr gave for the transfer.

## B.

In April 2012 an officer wrote a disciplinary report and sent Jacoby to disciplinary segregation for possessing contraband.  When his belongings arrived at his new cell, he noticed that some of his things were missing.  Believing that one of the officers was to blame, Jacoby started screaming for a BCCC supervisor so that he could lodge a complaint.  Keers, Rowell, and Boyington came to his cell and, after Jacoby continued to scream despite their orders to stop and lie down on the floor, they entered the cell and sprayed him with oleoresin capsicum spray (a form of pepper spray).  Because Jacoby continued to ignore the officers' verbal commands for him to calm down and lie down, Keers and Rowell physically put him on the floor.  In the process Keers allegedly rubbed Jacoby's face in pepper spray on the floor.  After they had restrained him, they washed his face with water for two to three seconds and placed him in a restraint chair.  Rowell states that they left him in that chair "on fifteen minute checks," though neither he nor the other defendants explain what fifteen minute checks are or how they are conducted.

4

The officers left Jacoby, still wearing his pepper-sprayed clothes, alone in the chair for eight and one-half hours.  Jacoby begged for clean clothes and to use the toilet, but he received no help, urinated on himself, and continued to burn from both the pepper spray and the urine.   While in the chair, Jacoby heard people, not identified in his verified complaint, laughing at him, and he heard someone yell "burn, bitch" and "sue me now[,] punk."

## II.

Jacoby filed this lawsuit alleging, among other things, that (1) Carr retaliated against him for filing grievances and a lawsuit by transferring him to high max; (2) Keers, Rowell, and Boyington retaliated against him for filing grievances and a lawsuit by pepper spraying him and putting him in the restraint chair; and (3) Keers and Rowell used excessive force in pepper spraying him and keeping him in the restraint chair for more than eight hours, and Boyington failed to intervene and prevent that use of excessive force.[3]

---

[3] While Jacoby also asserted supervisory claims against Mack for inadequate policies and procedures that led to the excessive force and retaliation, and while at the end of his appellate brief Jacoby requests that his claims against Mack be reinstated, he otherwise does not mention Mack's policies or procedures.  As a result, he has abandoned his supervisory liability claims against Mack.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

III.

Jacoby's retaliation claim against Carr arises from his transfer to high max in February 2012.  His retaliation claim against Keers, Rowell, and Boyington arises from the pepper spray and restraint chair incident.  To prevail on a retaliation claim, an inmate must show that (1) he engaged in speech or conduct protected by the Constitution; (2) the defendant took action of such a nature that it "would likely deter a person of ordinary firmness" from exercising that right; and (3) a causal connection exists between the protected activity and the retaliatory action.  Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005).

A.

As to his retaliation-by-transfer claim against Carr, Jacoby contends that the district court erroneously accepted as a fact Carr's statement that Jacoby had threatened to kill an officer — a fact that he disputes — in granting summary judgment on that claim.  The district court did accept as a fact Carr's statement that Jacoby had threatened to kill an officer, and it was error to do so.  Because our review is de novo, however, see Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013), and because "[t]he Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only," we address the merits of Jacoby's claim.  Marsh v. Butler Cty., 268 F.3d 1014, 1022

6

(11th Cir. 2001) (en banc), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).  Accepting, as we must at the summary judgment stage, Jacoby's assertion that he did not threaten to kill an officer, his claim still fails because he has not shown any causal connection between his filing grievances and a lawsuit and Carr's decision to transfer him to high max.  The causal connection element of Jacoby's retaliation claim requires him to show that his protected conduct was a motivating factor behind Carr's decision to transfer him.  See Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008).

As for Jacoby's lawsuit, it cannot possibly have been a motivating factor behind the transfer because he filed it on March 19, 2012, more than three weeks after the transfer occurred.  As for the grievances, Jacoby's verified complaint offers only bare assertions that the transfer was retaliation for filing grievances and lacks any facts supporting those naked assertions.  Without any evidence that his filing grievances was a motivating factor behind the transfer, a reasonable jury could not return a verdict in his favor on this retaliation claim.  Even though Jacoby's verified complaint "may be treated as an affidavit on summary judgment," United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys., 941 F.2d 1428, 1444 n.35 (11th Cir. 1991), "[t]his court has consistently held that conclusory allegations [in an affidavit] without specific supporting facts

have no probative value." Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985).

Even if we assumed, however, that the grievances were a motivating factor, Carr's affidavit establishes that the transfer would have occurred "in the absence of the protected activity." Mosley, 532 F.3d at 1278 ("If the [retaliation claim] defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on . . . summary judgment.") (quotation marks omitted). While Jacoby denies that he threatened an officer, he does not dispute Carr's other explanations for transferring him. He does not deny that he had requested protective custody because he had enemies in general population. He does not deny that he had a history of refusing to cooperate with officers. And he does not deny that he had a history of hiding contraband. All of those reasons were legitimate, non-retaliatory reasons behind Carr's decision to transfer him, and all of those reasons are undisputed. Because the undisputed facts show that the transfer would have occurred even in the absence of filing grievances, the district court did not err in granting summary judgment in favor of Carr on Jacoby's retaliation-by-transfer claim.

## B.

Jacoby's other retaliation claim alleges that Keers, Rowell, and Boyington pepper sprayed him and left him in the restraint chair as retaliation for his filing

8

grievances and a lawsuit.  Jacoby no longer contends that the initial use of pepper spray was improper given his refusal to calm down, follow the officers' commands, and lie on the floor.  As for his contention that the officers retaliated against him by leaving him inadequately decontaminated in the restraint chair for over eight hours, the district court erroneously concluded that because Jacoby had failed to show that the pepper spray and restraint chair incident violated his Fourteenth Amendment rights, he could not rely on that incident to support his retaliation claim.  We have never required a plaintiff claiming retaliation to show that the retaliatory conduct, in and of itself, was a violation of his constitutional rights.  Instead, the conduct need only be of such a nature that it "would likely deter a person of ordinary firmness" from engaging in the protected conduct. See Bennett, 423 F.3d at 1254.

Applying the correct standard to Jacoby's pepper-spray retaliation claim, we conclude that summary judgment is nevertheless proper because Jacoby has failed to offer evidence of causation.  While he points to the fact that someone yelled "sue me now[,] punk" as evidence that the conduct was retaliatory, Jacoby does not identify who allegedly made that comment and he does not assert that it was one of the defendants.  Without some evidence of a causal connection showing that the defendants inadequately decontaminated him and left him in the chair because he had filed grievances, summary judgment on that retaliation claim was proper.

9

IV.

Jacoby's excessive force claim against Keers and Rowell arises from the combination of the pepper spray and restraint chair. He also alleges that Boyington violated his constitutional rights by failing to intervene in that alleged use of excessive force. As we have already mentioned, Jacoby no longer contends that the initial use of pepper spray constituted excessive force. The remaining conduct that Jacoby alleges violated his constitutional rights is Keers' rubbing his face in the pepper spray on the floor and the inadequate decontamination followed by the three officers leaving him alone for eight and one-half hours in the restraint chair burning from pepper spray and from having urinated on himself.

A.

For his excessive force claims, Jacoby contends that the district court erred by making factual findings about that claim at the summary judgment stage. The report and recommendation never mentions Jacoby's sworn statement that Keers rubbed his face in the spray on the floor, and it characterizes Jacoby as "disorderly," "defiant," "disruptive," and threatening as evidenced by his "recalcitrant screaming" while in the restraint chair. After finding those facts, the court relied on them as justification for the officers' decision to leave Jacoby in the chair for so long and as the basis for concluding that the officers' actions were reasonable and, as a result, lawful. It then used that lawfulness conclusion to

dispose of the failure to intervene claim against Boyington, which depended on Jacoby's underlying excessive force claim against Keers and Rowell.

The defendants, however, offered no evidence of Jacoby's actions after they initially placed him in the restraint chair, and the only evidence of what happened during the eight and one-half hours he was kept in the chair comes from Jacoby's verified complaint. It states that he begged to be cleaned up and to be taken to the bathroom while he was in the chair, but he was laughed at and taunted instead.

At summary judgment we must view the evidence "in the light most favorable to the party opposing the motion . . . ." Gerling Global Reinsurance Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233–34 (11th Cir. 2001) (quotation marks omitted). And there is no interested party exception to that rule. Feliciano v. City of Miami Beach, 707 F.3d 1244, 1246–47 (11th Cir. 2013). The district court erroneously construed against Jacoby his allegations that he cried for help while in the restraint chair, characterizing those actions as defiant and disorderly. Because we review de novo the district court's grant of summary judgment on the grounds of qualified immunity, we will look at the evidence in the light most favorable to Jacoby in order to determine whether the defendants are entitled to qualified immunity.

To obtain qualified immunity, the defendants first must show that they were acting within their discretionary authority, Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1352 (11th Cir. 2015), and there is no dispute that they

11

were.  To overcome the qualified immunity defense, Jacoby must establish (1) that the defendants violated his constitutional rights and (2) "that the law clearly established those rights at the time of the alleged misconduct."  Id. at 1352–53 (quotation marks omitted).  "We may address those two inquiries in either order." Id. at 1253.

The standard we previously used to determine whether a defendant used excessive force under the Fourteenth Amendment — which required the plaintiff to show that the defendant applied the force "maliciously or sadistically for the very purpose of causing harm," see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) — has been abrogated by Kingsley v. Hendrickson, 576 U.S. —, 135 S. Ct. 2466 (2015).  In that opinion, the Supreme Court held that "a pretrial detainee must show only that the force . . . used against him was objectively unreasonable." Kingsley, 135 S. Ct. at 2473.  As a result, we proceed with the Fourteenth Amendment violation inquiry of the qualified immunity analysis under Kingsley's objective unreasonableness standard.

The evidence construed in Jacoby's favor shows that after he was pepper sprayed, his face was rubbed in pepper spray on the floor, washed with water for two to three seconds and then he was left alone in the restraint chair for more than eight hours while still in his pepper-sprayed clothes.  During that time he urinated on himself and cried for help because he burned from his pepper-sprayed and

12

urine-soaked clothing.  Rowell and Keers argue that because they left him on

"fifteen minute checks," they did not know how long he remained in the chair or

that he was in any pain, so they are not responsible for what happened after they

left him.  They offer no explanation, however, of what "fifteen minute checks" are,

who conducted them, how they were conducted, or what assurance the two of them

had that the checks would be conducted.  As a result, the evidence at the summary

judgment stage shows only that they ordered those "checks" and Jacoby was then

left unattended for over eight hours to burn from pepper spray and urine.  Viewing

the facts in the light most favorable to Jacoby, as we must at this stage, there is a

genuine issue of material fact about whether Rowell and Keers' actions were

objectively unreasonable and in violation of Jacoby's Fourteenth Amendment right

to be free from excessive force.[4]

Rowell and Keers contend that even if there is a question of fact about

whether they violated Jacoby's constitutional rights, they are still entitled to

qualified immunity because the alleged unlawfulness of their conduct was not

clearly established at the time it occurred.  While Kingsley's objective

unreasonableness standard governs the existence of a constitutional violation, that

decision was issued after the restraint chair incident took place, so it plays no part

---

[4] As for Boyington, Jacoby's claim against him is based on a failure to intervene theory. There is no allegation that Boyington had any involvement in the "fifteen minute checks" or in any events after Jacoby was initially put in the restraint chair.  Without any showing that Boyington acted or failed to act during the incident, Jacoby's claim against him fails.  Summary judgment in Boyington's favor on the failure to intervene claim was proper.

13

in our determining whether the unlawfulness of Rowell and Keers' conduct was clearly established at the time it occurred.  See, e.g., Belcher v. City of Foley, 30 F.3d 1390, 1400 n.9 (11th Cir. 1994) ("[Cases] decided after the conduct in this case occurred . . . could not have clearly established the law at the time of the conduct in this case.").  Instead, in order to determine whether the clearly established requirement is met in this case, we look to pre-Kingsley case law, which applied the old "sadistic or malicious" standard for excessive force.

Our analysis here is governed by our decision in Danley v. Allen, 540 F.3d 1298 (11th Cir. 2008), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709–10 (11th Cir. 2010).  In the Danley case, the defendant-officers sprayed the plaintiff with pepper spray for three to five seconds, pushed him into a small, poorly ventilated cell, and closed the door.  Id. at 1304–05.  After twenty minutes (ten of which the plaintiff spent begging to be let out), the jailers removed him from the cell, allowed him to take a two minute shower, and then placed him in a larger, but still poorly ventilated, group cell.  Id.  The plaintiff continued to suffer from the pepper spray's effects and eventually "almost blacked out" from breathing difficulties.  Id.  After at least twelve hours of suffering, the plaintiff was released from the jail.  Id.

This Court held that the officers' use of force against the Danley plaintiff was excessive and in violation of the Fourteenth Amendment, noting that "[w]hen

14

jailers continue to use substantial force against a prisoner who has clearly stopped resisting — whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated — that use of force is excessive." Id. at 1309. And when an inmate has stopped resisting "there is no longer a need for force, so the use of force thereafter is disproportionate to the need." Id.

The Danley decision's legal principle that jailers cannot continue to use force against a compliant inmate clearly established the unlawfulness of Rowell and Keers' alleged conduct. See Danley, 540 F.3d at 1313 ("A government official can be put on notice that his actions will violate a constitutional or statutory right by . . . a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed . . . ."). The facts as they stand at this point in the proceedings are that Rowell and Keers left Jacoby unattended in the restraint chair after pepper-spraying him, rubbing his face in pepper spray on the floor, and providing clearly inadequate decontamination. They left him there for more than eight hours in his pepper-sprayed and urine-soaked clothes with no opportunity for relief.[5] Those circumstances create a fact question about whether there was an excessive continuation of the use of force after Jacoby was already subdued or restrained, and our decision in Danley clearly

---

[5] We realize, of course, that what we consider to be the facts for present purposes may not be the actual facts determined in further proceedings. See, e.g., Swint v. City of Wadley, 5 F.3d 1435, 1439 (11th Cir. 1993), overruled on other grounds by Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 115 S. Ct. 1203 (1995).

15

establishes the right to be free from that kind of excessive force. The district court erred in granting summary judgment to Rowell and Keers on Jacoby's excessive force claims against Rowell and Keers.

## V.

Because the district court erred in granting summary judgment on Jacoby's excessive force claims against Rowell and Keers, we reverse the entry of summary judgment on those claims and remand them for further proceedings. We affirm the district court's grant of summary judgment on all of the other claims.

**AFFIRMED** in part and **REVERSED** and **REMANDED** in part.