GERLING GLOBAL REINSURANCE CORP. OF AMERICA; Gerling Global Reinsurance Corp.—U.S. Branch; Gerling Global Life Reinsurance Company; Gerling Global Life Insurance Company; Gerling America Insurance Company; and Constitution Insurance Corp., Plaintiffs–Appellees–Cross–Appellants–Plaintiffs–Appellants,

v.

Harry W. LOW, in his capacity as the Commissioner of Insurance of the State of California, Defendant–Appellant–Cross–Appellee Defendant Appellee.

Assicurazioni Generali, Plaintiff-Appellee-Cross-Appellant-Plaintiff-Appellant,

v.

Harry W. Low, individually, and in his capacity as the Insurance Commissioner for the State of California, Defendant–Appellant–Cross–Appellee–Defendant–Appellee.

Winterthur International America Insurance Company, Winterthur International America Underwriters Insurance Company; General Casualty Company of Wisconsin, Regent Insurance Company; Republic Insurance Company; Southern Insurance Company, Unigard Indemnity Company; Unigard Insurance Company; and Blue Ridge Insurance Company, Plaintiffs–Appellees-Cross-Appellants-Plaintiffs-Appellants,

v.

Harry W. Low, in his capacity as Insurance Commissioner for the State of California, Defendant-Appellant-Cross-Appellee-Defendant-Appellee.

American Insurance Association and American Re–Insurance Company, Plaintiffs–Appellees–Cross–Appellants–Plaintiffs–Appellants,

v.

Harry W. Low, in his capacity as Insurance Commissioner for the State of California, Defendant-Appellant-Cross-Appellee-Defendant-Appellee.

Nos. 01–17023, 01–17433, 02–15282.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2002.

Filed July 15, 2002.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 9, 2002.*

* Judges Graber and Paez have voted to deny the Plaintiffs' petitions for rehearing en banc, and Judge Goodwin has so recommended.

Frank Kaplan, Jesse Contreras, Ryan S. Hedges, Alschuler Grossman Stein & Kahan LLP, Los Angeles, CA, Leslie Tick, California Dept. of Insurance, San Francisco, CA, Andrew W. Stroud, Mennemeier, Glassman & Stroud, LLP, Sacramento, CA, Michael D. Ramsey, San Diego, CA, for the defendant-appellant-cross-appellee-defendant-appellee.

George L. O'Connell, Stevens & O'Connell LLP, Sacramento, CA; Frederick W. Reif, Wilson Elser Moskowitz Edelman & Dicker LLP, New York, NY; Sally Agel, Milbank, Tweed, Hadley & McCloy LLP, Los Angeles, CA; William H. Webster, Milbank, Tweed, Hadley & McCloy LLP,

Washington, DC; and Kenneth S. Geller and Neil M. Soltman, Mayer, Brown, Rowe & Maw, Washington, DC, for the plaintiffs-appellees-cross-appellants-plaintiffs-appellants.

Mark B. Stern and Douglas Hallward Driemeier, Department of Justice, Washington, DC; H. Lee Roussel, Assistant Attorney General, Office of the Attorney General, Olympia, WA; Daniel J. Siegel, Supervising Deputy Attorney General, Office of the Attorney General, Sacramento, CA; David A. Lash, Bet Tzedek Legal Services, Los Angeles, CA; and Roger M. Witten, Wilmer, Cutler & Pickering, Washington, DC, for the amici curiae.

Before GOODWIN, GRABER, and PAEZ, Circuit Judges.

GRABER, Circuit Judge.

This case comes before us for the second time. Plaintiffs, which are various insurance companies and a trade association of insurance companies, brought the present action to enjoin Defendant Harry W. Low, the Insurance Commissioner of the State of California (Commissioner), from enforcing a California statute requiring disclosure of information about Holocaust-era insurance policies. The district court permanently enjoined enforcement of the statute. The main question for decision is this: May California constitutionally require the disclosure of insurance claims-related information by an insurance company that is licensed to do business in California even though the required information may be in the hands of a related entity that is located in a foreign country? We answer that question "yes" and, ac-

cordingly, reverse the judgment of the district court and vacate the injunction.

## FACTUAL AND PROCEDURAL HISTORY

The Holocaust Victim Insurance Relief Act of 1999, Cal. Ins.Code §§ 13800–13807 (HVIRA), requires any insurer doing business in California that sold insurance policies to persons in Europe that were in effect between the years 1920 and 1945 (Holocaust-era policies) to file certain information about those policies with the Commissioner.[1] Cal. Ins.Code § 13804(a). The reporting requirement also applies to insurance companies that do business in California and are "related" to a company that sold Holocaust-era policies, even if the relationship arose after the policies were issued. *Id.* A "related company" is defined as any "parent, subsidiary, reinsurer,[2] successor in interest, managing general agent, or affiliate company of the insurer." *Id.* § 13802(b). The statute instructs the Commissioner to store the information in a "Holocaust Era Insurance Registry," which is to be made available to the public. *Id.* § 13803. The Commissioner "shall suspend the certificate of authority to conduct insurance business in the state of any insurer that fails to comply" with the reporting requirements, until the insurer complies. *Id.* § 13806.

Plaintiffs filed four separate actions in which they sought to enjoin the enforcement of HVIRA. The original complaints were filed by

(1) Gerling Global Reinsurance Corp. of America and its affiliates (collectively, Gerling), who are, according to their complaint, "arguably 'affiliated' [with] ... or 'related [to]' " two German insurers that issued Holocaust-era policies; (2) American Insurance Association (AIA), a nonprofit trade association of insurers whose member-insurers are required to report under HVIRA, and American Reinsurance Company, a wholly owned subsidiary of a German corporation "that has investment interests in European insurance companies that do issue insurance policies"; (3) Winterthur International America Insurance Company, its affiliates, and numerous other insurance and underwriting companies (collectively, Winterthur), who are "arguably 'related companies' ... with more than forty insurance companies currently located in Europe"; and (4) Assicurazioni Generali (Generali), an Italian insurance company that issued Holocaust-era policies and currently does business in California.

*Gerling Global Reins. Corp. of Am. v. Low,* 240 F.3d 739, 742 (9th Cir.2001) (*Gerling I*), *cert. dismissed,* —— U.S. ——, 122 S.Ct. 1907, 151 L.Ed.2d 961 (2002).

---

1. The information that the insurance companies must provide is: (1) the number of Holocaust-era insurance policies; (2) the holder, beneficiary, and current status of each policy; and (3) the city of origin, domicile, or address for each policyholder listed in the policies. Cal. Ins.Code § 13804(a)(1)-(3). In addition, the insurer must certify that: (1) the proceeds of the policies were paid; or (2) the beneficiaries or heirs could not, after diligent search, be located, and the proceeds were distributed to Holocaust survivors or charities; or (3) a court of law has certified a plan for the distribution of the proceeds; or (4) the proceeds have not been distributed. The implementing regulations state that, if "the insurer states that it has no actual policies to report because the records are no longer in the possession of the insurer or its related company(ies), it shall provide a complete explanation of that statement." Cal.Code Regs. tit. 10, § 2278.2(a). Any insurer who knowingly files false information is subject to a penalty not to exceed $5,000. Cal. Ins.Code § 13805.

2. By regulation, the meaning of "reinsurer" is limited to directly related companies. Cal. Code Regs. tit. 10, § 2278.1(i).

Plaintiffs sought declaratory and injunctive relief, claiming that HVIRA violated a number of constitutional provisions. Additionally, Plaintiff Gerling asked the court to review two statutes that were enacted at the same time as HVIRA: (1) California Code of Civil Procedure § 354.5, which allows California residents to bring claims for the payment of Holocaust-era insurance policies and extends the statute of limitations on such claims until December 31, 2010; and (2) California Insurance Code § 790.15, which instructs the Commissioner to suspend the certificate of authority of any insurer who has failed to pay on valid Holocaust-era policies. The Commissioner, in his motion to dismiss, argued that Gerling did not have standing to challenge these two additional statutes. The district court granted the motion to dismiss the additional challenges because Gerling had not established an imminent threat of prosecution. Gerling did not appeal that ruling. *Gerling I*, 240 F.3d at 742–43.

The district court issued an order granting Plaintiffs' motions for preliminary injunction and enjoined enforcement of HVIRA and its implementing regulations pending the entry of final judgments. The court based its preliminary injunction on a determination that Plaintiffs had established that (1) they probably would succeed under the foreign affairs doctrine and the Commerce Clause, and (2) enforcement of the statute would cause Plaintiffs irreparable harm. The district court did not reach Plaintiffs' other constitutional challenges to the statute.

The Commissioner appealed the district court's decision. We rejected Plaintiffs' Commerce Clause and foreign affairs doctrine challenges to the statute as a matter of law. *Id.* at 743, 751. However, we left the preliminary injunction in place "in order to give the district court an opportunity to consider whether Plaintiffs are likely to succeed on the merits" of their due process claims. *Id.* at 754.

On remand, the district court conducted further proceedings and ultimately held that the statute violates Plaintiffs' right to procedural due process by "mandating license suspension for non-performance of what may be impossible tasks without allowing for a meaningful hearing." *Gerling Global Reins. Corp. of Am. v. Low*, 186 F.Supp.2d 1099, 1113 (E.D.Cal.2001) (*Gerling II*). The court granted Plaintiffs' summary judgment motion, denied the Commissioner's summary judgment motion, and permanently enjoined the Commissioner from enforcing the statute. *Id.* The Commissioner filed a timely notice of appeal. Plaintiffs timely cross-appealed the district court's denial of their alternative grounds for summary judgment.

Plaintiffs moved for a determination that they were entitled to attorney fees as prevailing parties under 42 U.S.C. §§ 1983, 1988. The district court denied their motion, and Plaintiffs timely appealed that decision as well.

## STANDARD OF REVIEW

We review de novo the district court's grant or denial of summary judgment. *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1164 (9th Cir.2000). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court properly applied the relevant substantive law. *Id.* We also review de novo the constitutionality of a statute. *Dittman v. California*, 191 F.3d 1020, 1024–25 (9th Cir.1999).

## LEGISLATIVE JURISDICTION

Key to Plaintiffs' position in this appeal is the assertion that the California legisla-

ture exceeded its legislative authority and, by doing so, violated Plaintiffs' due process rights. Specifically, Plaintiffs argue that HVIRA regulates extraterritorially, that is, imposes requirements on entities that are located outside California's borders and alters the substance of insurance contracts executed outside the state. We are not persuaded.

■ We begin from the premise that a state legislature possesses nearly plenary power to regulate state-licensed businesses and to seek information from entities that are licensed to do business within that state. "The wisdom of[a licensing disclosure] requirement is not for us to judge. For in the end, 'it is for the legislature, not the courts, to balance the advantages and disadvantages of ... new requirement[s].'" *Dittman*, 191 F.3d at 1032 (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955)) (second alteration in original). Further, we "will not presume that information sought by state officials for which there is a legitimate purpose will be put to an unconstitutional use." *Lewis v. Younger*, 653 F.2d 1258, 1260 (9th Cir.1980).

We next emphasize what HVIRA does and does not do. We already have cautioned that Plaintiffs' argument that HVIRA "attempts to regulate the decision making authority of European insurance companies to pay or not to pay claims on European policies ... mischaracterizes HVIRA as a matter of law." *Gerling I*, 240 F.3d at 745 (internal quotation marks omitted). We have explained that HVIRA is a reporting statute which, "by its terms, does not regulate 'the decision making au-

thority of European insurance companies to pay or not to pay claims on European policies' in any way." *Id.* (internal quotation marks omitted). Further, we have held that the statute "is a California insurance regulation of California insurance companies" that "requires California companies only to *provide information* about Holocaust-era insurance policies that they (or any of their affiliates) issued." *Id.* at 746, 745; *see id.* at 745 (distinguishing HVIRA from "state laws [that] sought to regulate directly the conduct of an insurer in another jurisdiction. By contrast, HVIRA seeks only to obtain information about conduct in another jurisdiction, without affecting directly any of that conduct").

Plaintiffs rely heavily on *Gerling Global Reinsurance Corp. of America v. Gallagher*, 267 F.3d 1228 (11th Cir.2001), in which the Eleventh Circuit held that a Florida statute similar to HVIRA violated due process because it was enacted in excess of the state's legislative jurisdiction. We find that case uninstructive in analyzing the reach of HVIRA, for two reasons.

First, *Gallagher* is materially distinguishable. In *Gallagher*, information was demanded directly from both local and foreign entities,[3] while here information is sought *only* from the California licensees.

Further, the *Gallagher* court held that the sole purpose of the Florida statute was the payment of Holocaust-era claims and that no other justification for the statute, such as the Florida licensees' fitness to do business, had been properly advanced. *Id.* at 1239–40. By contrast, we construe HVIRA to have several legitimate purposes.[4]

---

**3.** Florida's insurance commissioner issued subpoenas addressed to Florida-licensed insurers *and their foreign affiliates,* demanding disclosure of a wide range of documents. *Gallagher,* 267 F.3d at 1231.

**4.** The Eleventh Circuit acknowledged the importance to its analysis of the Florida statute's purpose:

We do not mean to say that the Commissioner is necessarily without authority to

Additionally, as we have noted, the only statute at issue in this appeal is a reporting statute. Proposed challenges to other laws that alter the statute of limitations and provide a forum for substantive claims were dismissed for lack of standing. By contrast, the statute considered in *Gallagher* contained both disclosure and substantive elements. *See id.* at 1229, 1239. Although the Eleventh Circuit based its ruling on only the disclosure provisions, *id.* at 1234, the difference in the structure of the two statutes still is meaningful. The California legislature already made the policy judgment that the reporting requirement is severable and has independent force. Thus we need not guess whether the reporting requirement is merely ancillary to substantive regulations directly affecting out-of-state entities and transactions. *Cf. id.* at 1239 ("[T]he Legislature's inclusion of the claims recovery provisions in the same statute *itself* belies any suggestion that the reporting provisions are really intended to protect ordinary policyholders by monitoring the exposure and financial sufficiency of Florida insurers.").

▪ The second reason why we decline to adopt the reasoning of *Gallagher* is that it offers an interpretation of the legislative jurisdiction doctrine that conflicts with the relevant precedents, at least insofar as a statute like HVIRA is concerned. The legislative jurisdiction cases appear to fall into three different categories, each proscribing a certain type of legislative enactment, and HVIRA falls into none of them. We will discuss these three categories in turn.

A. *Regulation of Out–of–State Entities on the Basis of Incidental In–State Contacts*

Several cases have held that the legislative jurisdiction doctrine bars states from directly regulating out-of-state entities unless those entities and their regulated activities have minimum contacts with the state. The analysis in these cases often parallels the analysis of whether the state would have personal jurisdiction over a party in the context of a judicial proceeding.

Thus, for instance, in *Adventure Communications, Inc. v. Kentucky Registry of Election Finance*, 191 F.3d 429, 432 (4th Cir.1999), the Fourth Circuit applied the legislative jurisdiction doctrine to a Kentucky statute regulating out-of-state television and radio broadcasters who sold advertising time to Kentucky gubernatorial candidates. Finding that the requisite minimum contacts existed between the state, the broadcasters, and their campaign-advertising practices, the court held that Kentucky's statute did not violate due process. *Id.* at 437–38.

investigate and obtain records regarding the practices of affiliates of Florida insurers. On the contrary, separate provisions of the Florida Insurance Code may well give the Commissioner authority to conduct far-reaching inquiries into the affairs of a Florida insurer's affiliates in order to determine whether the Florida insurer is fit to do business in the state....

We offer no view as to whether these provisions (which the Commissioner does not even invoke) might have authorized the subpoenas served by the Commissioner in this case; nor do we offer any view regarding the constitutionality of invoking those provisions in this context. Certainly these provisions fit more closely with the purpose *now* asserted by the Commissioner, and that fact may well affect the Due Process analysis. But the critical point is that *these* subpoenas were issued in furtherance of an investigation under the Holocaust Victims Insurance Act, and *that* Act is not concerned with the financial stability or fitness of insurers doing business in Florida....

*Gallagher*, 267 F.3d at 1240.

Similarly, in *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 221 F.3d 1211, 1213 (11th Cir.2000) (per curiam), the Eleventh Circuit applied the legislative jurisdiction doctrine to a county ordinance requiring persons, wherever located, who solicited charitable contributions within the county to register with the county before performing services for their clients. The ordinance also placed limitations on the ability of outside solicitors and consultants to raise funds in the county for organizations that had not themselves registered. *Id.* The court, finding that it had insufficient facts with which to perform the "minimum contacts" analysis, remanded the case to the district court for further development of the record. *Id.* at 1215–16.

Finally, in *Quill Corp. v. North Dakota*, 504 U.S. 298, 301–02, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the Supreme Court considered the validity of a use tax imposed by North Dakota on out-of-state mail-order vendors who sold goods to North Dakota residents for consumption within the state. The Court found that the requisite minimum contacts existed between the state and the regulated vendors, so that the statute did not exceed North Dakota's legislative jurisdiction. *Id.* at 308, 112 S.Ct. 1904.

As we have explained previously, HVIRA cannot properly be regarded as a statute that directly regulates foreign insurance companies. Although Plaintiffs complain that the practical effect of the statute is to force foreign companies to search through their records and compile the requested information, this characterization ignores a number of relevant facts. HVIRA places no *direct* demands on these foreign entities and does not impose any sanctions on *them* for noncompliance.[5] Thus, both the demands and the sanctions of the statute fall solely on California insurers. Should the foreign company desire not to help a California affiliate comply with HVIRA, it need not do so. In fact, Plaintiffs themselves highlight this feature of the statute when they argue that they cannot comply due to their lack of "control" over the requested information.

Additionally, California insurers can comply with the statute even in the absence of assistance from foreign affiliates, in at least two ways: The California insurer's employees could travel overseas to examine the documents themselves, or the California insurer could disaffiliate and thus shed any reporting requirement. Either way, foreign insurers would bear no burden resulting from their affiliates' compliance with HVIRA.

In summary, the statutes at issue in *Adventure Communications, American Charities,* and *Quill Corp.* are distinguishable from HVIRA because they directly regulated out-of-state businesses. By contrast, HVIRA directly regulates the behavior of only California insurers.

B. *Regulation of the Substance of Out-of-State Transactions*

A second line of cases addresses the extent to which a state may regulate, and

---

5. The Gerling and Winterthur Plaintiffs point to letters sent by the California State Treasurer to Plaintiffs' foreign affiliates, urging the companies to help their California affiliates comply with HVIRA. However, these letters were requests, not demands, and carried with them no threat of direct sanctions. Foreign affiliates were and are free to ignore these entreaties. Accordingly, these letters cannot be characterized as a form of direct regulation imposed on foreign insurers.

Moreover, even if these letters were improper, they do not make the statute unconstitutional on its face. HVIRA places no demands directly on foreign insurers; if the Commissioner or other state officials erroneously do so, they do not alter the statute.

thereby alter, the *substance* of a transaction executed outside the state and having few in-state consequences. These cases proceed from an analogy based on the "choice-of-law" principle, that is, whether a state has sufficient contacts with the parties and the transaction to apply its substantive law to affect the nature of the transaction. *See, e.g., Allstate Ins. Co. v. Hague,* 449 U.S. 302, 308, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

Thus, in *Home Insurance Co. v. Dick,* 281 U.S. 397, 403–04, 50 S.Ct. 338, 74 L.Ed. 926 (1930), the Supreme Court considered whether a Texas insurance statute could apply in the context of litigation over an insurance policy that had been issued in Mexico, by a Mexican insurer, to a Mexican citizen, covering losses occurring in Mexican waters. The statute, had it applied, would have invalidated an essential substantive term in the insurance policy that was legal in Mexico. *Id.* at 404–05, 50 S.Ct. 338; *id.* at 407, 50 S.Ct. 338 ("As construed, it also directs the disregard in Texas of contractual rights and obligations wherever created and assumed; and it commands the enforcement of obligations in excess of those contracted for."). The Court held that the statute, as applied, violated due process because there were insufficient contacts between Texas and the insurance policy that the statute served to alter: "Texas was therefore without power to affect the terms of contracts so made. Its attempt to impose a greater obligation than that agreed upon and to seize property in payment of the imposed obligation violates the guaranty against deprivation of property without due process of law." *Id.* at 408, 50 S.Ct. 338.

Similarly, in *Watson v. Employers Liability Assurance Corp.,* 348 U.S. 66, 67–70, 75 S.Ct. 166, 99 L.Ed. 74 (1954), the Supreme Court applied the legislative jurisdiction doctrine to a Louisiana insurance statute that purported to void certain provisions in insurance contracts entered into outside Louisiana. Likewise, in *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* 292 U.S. 143, 149, 54 S.Ct. 634, 78 L.Ed. 1178 (1934), the Court refused to enforce a Mississippi statute that altered the terms of an out-of-state contract for a fidelity bond. The Court held:

> The Mississippi statutes, so construed, deprive the appellant of due process of law. A state may limit or prohibit the making of certain contracts within its own territory; but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made. Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen.
>
> ... A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment.

*Id.* at 149–50, 54 S.Ct. 634 (citations omitted).

More recently, in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 799, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court examined whether a Kansas court could apply Kansas law to a class action involving plaintiffs from all 50 states who were seeking to recover royalty payments with respect to lands leased by Phillips Petrole-

um in 11 states. Highlighting the substantive differences between the laws of Kansas and the laws of the states where the lands were leased, the Court held that Kansas lacked sufficient contacts with the out-of-state transactions to apply Kansas law. *Id.* at 816–17, 821, 105 S.Ct. 2965.

HVIRA's reporting provisions do not seek to regulate the substance of out-of-state transactions. The statute does not require insurers to pay any claims or otherwise alter the terms of Holocaust-era insurance policies.[6] To the contrary, HVIRA requires California insurers only *to disclose information about* their foreign transactions or those of their affiliates. A request for information is simply not equivalent to a direct regulation of out-of-state transactions. Thus, cases such as *Hague, Dick, Watson, Hartford,* and *Phillips* are inapposite because HVIRA does not change the terms or enforceability of the insurance policies issued by Plaintiffs or their foreign affiliates.

Plaintiffs counter by asserting that the express purpose of HVIRA is to force California-licensed insurers and their foreign affiliates to pay any outstanding Holocaust-era claims long after the statute of limitations for such claims has run. However, this assertion ignores the fact that the statute has several other purposes as well. As we said in our previous opinion, it "also is likely that California's legislature simply intended to protect its residents from insurance companies that have not paid valid insurance claims." *Gerling I,* 240 F.3d at 745. Further, the Commissioner has propounded other legitimate

purposes for the statute, such as informing California residents about potentially valid claims and about the character of the family of companies with whom they might contract for insurance.

Plaintiffs point to two other California statutes that, they contend, *do* seek to regulate the substance of foreign transactions. California Code of Civil Procedure § 354.5 allows California residents to bring claims for the payment of Holocaust-era insurance policies and extends the statute of limitations on such claims until December 31, 2010. California Insurance Code § 790.15 requires the Commissioner to suspend the certificate of authority of any insurer who has failed to pay claims on valid Holocaust-era policies. It may well be that these statutes were enacted in excess of California's legislative jurisdiction. However, we reiterate that these separately enacted provisions are not before us.[7] Because HVIRA does not change any obligation of any party to a foreign insurance contract, it is distinguishable from the precedents examined in this section.

C. *Taxation of In–State Entities Arising From Transactions Conducted Entirely Out–of–State*

In the third category of precedents on which Plaintiffs rely, the Supreme Court has applied a due process analysis to state statutes taxing out-of-state insurance transactions. Under these cases, a statute may exceed a state's legislative jurisdiction if it taxes a foreign insurer disproportion-

---

6. Plaintiffs contend that HVIRA's definition of "proceeds," Cal. Ins.Code § 13802(c), rewrites the terms of the foreign insurance policies because the parties to the insurance contracts never contemplated or bargained for such a definition. However, this definition of "proceeds" is *for reporting purposes only* and does not alter the substantive terms of, or

obligations arising under, any insurance policy.

7. In *Gerling I,* the district court held that Plaintiffs did not have standing to challenge these provisions, and Plaintiffs did not appeal this aspect of the court's decision. 240 F.3d at 742–43.

ately to its activities in the taxing state, even if the taxing statute does not change the substantive terms of any foreign insurance policy.

In *Connecticut General Life Insurance Co. v. Johnson*, 303 U.S. 77, 79, 58 S.Ct. 436, 82 L.Ed. 673 (1938), the Supreme Court invalidated a California statute taxing California-licensed insurers' receipt of premiums on reinsurance held by other California insurers. The reinsurance contracts that the state sought to tax were executed in Connecticut, where the premiums were paid and the losses, if any, were payable. *Id.* The Court found that California did not have a sufficient connection to the insurance policies to tax them because "[n]o act in the course of their formation, performance or discharge, took place" in the state. *Id.* at 81, 58 S.Ct. 436. Accordingly, the Court held that the statute violated due process: "The tax cannot be sustained either as laid on property, business done, or transactions carried on within the state, or as a tax on a privilege granted by the state." *Id.* at 82, 58 S.Ct. 436. Similarly, in *American Oil Co. v. Neill*, 380 U.S. 451, 452, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965), the Court employed a due process analysis to invalidate an Idaho tax on a state-licensed dealer in motor fuels that had sold a large amount of fuel through a series of out-of-state transactions. The Court held that the state could not constitutionally tax the extraterritorial sales because they were insufficiently related to the dealer's activities within Idaho.

*Id.* at 457–58, 85 S.Ct. 1130. The Court reaffirmed the principle that "there must be some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Id.* at 458, 85 S.Ct. 1130 (citation and internal quotation marks omitted).

Plaintiffs argue that *Connecticut General* and *Neill* are indistinguishable from the case before us. They note that HVIRA requires California insurers to expend resources in order to disclose information about transactions that were entered into and performed (or not performed) entirely outside the state. Thus, they argue that HVIRA, like the statutory provisions analyzed in *Connecticut General* and *Neill*, imposes financial consequences on in-state insurance companies based on those companies' out-of-state activities.[8]

HVIRA is distinguishable from the statutes analyzed in *Connecticut General* and *Neill* because the only regulation that it imposes on Plaintiffs is a duty to disclose information, rather than to pay money to the regulating state. A state's taxing the extraterritorial transactions of in-state insurance companies (thus gaining financially from a multi-jurisdictional entity's revenues) and a state's asking for information about those same transactions are qualitatively different requirements. The former is a form of direct regulation of the out-of-state transaction, and collects money on behalf of the state itself, while the latter is simply a means for the state to assure the

---

**8.** Notwithstanding the Commissioner's argument to the contrary, later decisions of the Supreme Court have not eviscerated *Connecticut General* and *Neill*. Cases such as *ASARCO Inc. v. Idaho State Tax Commission*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), and *Allied–Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992), can be read as requiring the taxing state to have minimum contacts with the transaction to be taxed.

*ASARCO*, 458 U.S. at 315, 327–29, 102 S.Ct. 3103 (citing *Connecticut General*); *Allied Signal*, 504 U.S. at 778, 112 S.Ct. 2251 ("Although our modern due process jurisprudence rejects a rigid, formalistic definition of minimum connection, we have not abandoned the requirement that, in the case of a tax on an activity, there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax.").

corporate good character and financial viability of companies doing business within the state. Plaintiffs' argument proves too much, because nearly every regulatory, record-keeping, and reporting statute requires a regulated entity doing business in more than one jurisdiction to expend resources to comply. Thus, we draw a bright line between obtaining information and obtaining tax revenues, just as we drew a bright line between obtaining information and substantively regulating the topics contained in the informational reports.[9]

### D. Conclusion

Were we to hold that a state may require companies operating within the state to *report* on only those out-of-state activities with which the state can claim minimum contacts, our logic would invalidate many existing reporting statutes.[10] State statutes and regulations routinely require multinational insurance companies, banks, and the like to disclose foreign activities and transactions engaged in by them and their parent and affiliate companies. Under Plaintiffs' strict conception of the legislative jurisdiction doctrine, states would be prohibited from requesting information about potentially fraudulent conduct committed by a local company's European parent simply because the "subject matter" of that conduct was a foreign transaction among foreign nationals. The Supreme

Court cases do not contemplate the use of the legislative jurisdiction doctrine to eviscerate state regulatory power so completely.

In conclusion, the legislative jurisdiction analysis is inapplicable to HVIRA, because it does nothing more than seek information from California-licensed insurers. Therefore, the Commissioner need not prove that minimum contacts exist between California, Plaintiffs' foreign affiliates, and the Holocaust-era policies issued by them. Instead, the state's power to enact and enforce HVIRA is bounded only by *other* constitutional protections. It is to an analysis of these other protections that we now turn.

### SUBSTANTIVE AND PROCEDURAL DUE PROCESS

The district court held that HVIRA violates procedural due process by "mandating license suspension for non-performance of what may be impossible tasks without allowing for a meaningful hearing." *Gerling II*, 186 F.Supp.2d at 1113. In the district court's view, the statute is unconstitutional because it does not allow a hearings officer to consider any excuse for noncompliance, even when an insurer can prove that it lacks control over the information requested or that disclosure of the information would violate foreign law. *Id.*

---

**9.** We also question the force of authorities such as *Connecticut General* and *Neill* outside the context of taxation. We already have acknowledged that cases defining the outer limits of a state's power to tax are not always readily transferable to other contexts. *See, e.g., Atonio v. Wards Cove Packing Co.,* 10 F.3d 1485, 1495 n. 8 (9th Cir.1993) (finding inapplicable "the line of cases ... in which the Supreme Court has struck down discriminatory state tax provisions for lack of a rational basis" because "state tax cases may genuinely be viewed as *sui generis;* it is an area where the Supreme Court has remained active long

after ceasing to invalidate other economic legislation on equal protection grounds").

**10.** Examples of statutes that could be constitutionally problematic under Plaintiffs' proposed analysis include: California Insurance Code § 699.5 (foreign subsidies); *id.* § 717 (qualifications for certificate of authority); *id.* §§ 1215–1215.16 (Insurance Holding Company System Regulatory Act); California Financial Code §§ 5800–5811 (savings and loan holding companies); *id.* §§ 10000–10009 (foreign savings companies).

at 1111. This aspect of the district court's decision is legally flawed because it conflates the analytically distinct concepts of procedural and substantive due process.

■ Regulated parties generally have a right to a meaningful hearing only with respect to those defenses actually allowed under a given statute. Thus, if a particular defense is deemed irrelevant under the statute, a party has no *procedural* due process right to a hearing with respect to that defense. Instead, the party's only avenue of recourse is to declare that it has a right to present its chosen defense as a matter of *substantive* due process. *See, e.g., Burlington N.R.R. v. Dep't of Pub. Serv. Regulation,* 763 F.2d 1106, 1113 (9th Cir.1985) ("If the statute is constitutional, the lack of a hearing does not make it unconstitutional. A state does not violate due process by making a legislative determination rather than a particularized inquiry if the subject of the legislation does not interfere with the exercise of fundamental rights."); *see also Bell v. Burson,* 402 U.S. 535, 541, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("The main thrust of Georgia's argument is that it need not provide a hearing on liability because fault and liability are irrelevant to the statutory scheme. We may assume that were this so, the prior administrative hearing presently provided by the State would be appropriate to the nature of the case." (citation and internal quotation marks omitted)).

Accordingly, the district court erred by not engaging in a two-step inquiry to determine, first, whether Plaintiffs were constitutionally entitled to raise foreign-affili-

ate and foreign-law defenses to HVIRA and, second, whether the statute provides Plaintiffs with the requisite level of process with respect to the defenses allowed under the statute. We will consider each aspect of this two-part analysis.

## A. Substantive Due Process and the Proposed Defenses

■ Plaintiffs argue that, as a matter of substantive due process, they must be entitled to raise defenses premised on their lack of control over the required information or the illegality under foreign law of their disclosure of the information.[11] We are not persuaded.

■ Because HVIRA neither employs a suspect classification nor infringes on a fundamental right, the applicable standard of review is the rational basis test. *See Richardson v. City of Honolulu,* 124 F.3d 1150, 1162 (9th Cir.1997) ("We will strike down a statute on substantive due process grounds if it is arbitrary and irrational."); *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 66 (9th Cir.1994) ("When reviewing the substance of legislation or governmental action that does not impinge on fundamental rights, ... we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did."). Accordingly, the proper standard by which to measure HVIRA's license-revocation provisions is whether they bear "a rational relationship to a legitimate state interest." *Burlington N.,* 763 F.2d at 1109.

11. HVIRA *does* incorporate a "literal impossibility" defense. That is, if a company's Holocaust-era records no longer exist, the statute does not require their disclosure. Cal.Code Regs. tit. 10, § 2278.2(a); *Gerling II,* 186 F.Supp.2d at 1105. The Commissioner also represents in his briefs that "[s]uspension could also be avoided if the information exists but is not in the possession, custody or control of the licensee or any of its related companies (e.g., if the information is in the possession of an unrelated company or is only located in a government archive)."

The Commissioner justifies the statute in several ways. First, the statute expressly states that its purpose is to provide California residents with information that facilitates their resolution of legitimate claims, if any, against private insurance companies through an international process or otherwise. Cal. Ins.Code § 13801.[12] Second, as we have acknowledged, California's legislature could have intended the statute to provide a means of protecting state residents from insurance companies that have not paid valid claims. *Gerling I*, 240 F.3d at 745. Third, the state has a legitimate interest in providing information to its citizens about the character of the family of insurance companies from which they are contemplating buying insurance.

Plaintiffs counter that the sole express *and* implicit purpose of the law is to force California-licensed insurers and their foreign affiliates to pay Holocaust-era claims. They ask us to reject the Commissioner's assertion of alternative purposes. Although subjectively the legislature's main purpose was to facilitate payment of Holocaust-era claims, we read the legislature's declared purposes to be somewhat broader than that. *See* Cal. Ins.Code § 13801(c), (e) (stating in part that insurers may be the sole source of information about Holocaust-era policies and that insurers have a responsibility to disclose that information to the state).

■ More importantly, however, the legislature's subjective or declared purpose is irrelevant in the context of rational basis review. A statute must be upheld under the rational basis analysis if it can be justified by *any* legitimate purpose, even one on which the government did not rely in enacting the statute, and even if the statute does a poor job of advancing the intended aims. *Dittman*, 191 F.3d at 1031 ("[W]e do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." (citation and internal quotation marks omitted)); *Richardson*, 124 F.3d at 1162 ("In a substantive due process challenge, we do not require that the City's legislative acts actually advance its stated purposes ...." (citation and internal quotation marks omitted)).

Faced with precedent suggesting that the California legislature's actual subjective or declared purpose in enacting the statute is irrelevant, Plaintiffs next argue that HVIRA's reporting requirements are not rationally related to any of the asserted purposes of the statute. They argue that the significance of the information requested under HVIRA cannot be analyzed meaningfully without considering whether Plaintiffs' affiliates were legally obligated to pay policyholders under foreign law. Similarly, they contend that, if the statute were directed at the integrity of California licensees, it would seek information not only on foreign affiliates' payment of Holocaust-related claims in Europe between 1920 and 1945, but also on all other aspects of the affiliates' claims-handling history. Further, they argue that there is no evidence of a relationship between Plaintiffs' current claims-handling practices in California and the claims-handling practices of their foreign affiliates in Europe dating back more than half a cen-

12. Helping California residents recover on valid insurance claims is a legitimate governmental purpose. The record shows that many Holocaust survivors are poor; to the extent that information can facilitate their recovery of insurance (through the means that Plaintiffs themselves recognize as valid, or otherwise), it will ease the burden on the state's fisc.

tury ago. In other words, they argue that HVIRA is over-inclusive in some respects and under-inclusive in others.

But, under the rational basis test, California need not demonstrate that the statute will *actually* serve the articulated purposes. Instead, the statute is constitutional if the legislature rationally could have *believed* that HVIRA would promote a legitimate objective. *Dittman,* 191 F.3d at 1032; *Burlington N.,* 763 F.2d at 1110. Further, a statute need not be a comprehensive response to a given problem to be rationally related to a legitimate governmental interest. Instead, legislation may proceed "'one step at a time'" and still satisfy the rational basis test. *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology,* 228 F.3d 1043, 1052–53 (9th Cir.2000) (quoting *Williamson,* 348 U.S. at 489, 75 S.Ct. 461), *cert. denied,* 532 U.S. 972, 121 S.Ct. 1602, 149 L.Ed.2d 469 (2001). The Holocaust is unique, and California's decision to proceed first with respect to these particular claims is both understandable and permissible. Finally, it is not only the claims-handling practices of 50 years ago that are at issue, but also the current and continuing failure of California-licensed insurers and their foreign affiliates to disclose information about any outstanding potentially valid claims.

Having thus established that, in general, HVIRA is constitutional under the rational basis test, we next must address whether the statute's failure to provide for foreign-affiliate and foreign-law defenses is *also* rationally related to legitimate governmental interests. We conclude that, even assuming that the California licensees do not have control of information in the hands of their foreign affiliates and that disclosure pursuant to HVIRA violates European data protection laws, those facts do not make the statute unconstitutional because

it was rational for the legislature to require disclosure as a condition to holding an insurance license in California. We agree with the Commissioner that the suggested defenses would hamper the state's ability to provide information to Holocaust victims and their families about potentially valid claims, to protect California citizens from insurance companies that have a history of refusing to pay valid claims or of refusing to inform potential beneficiaries about policy proceeds to which they may be entitled, and to inform California citizens about the character of the family of insurance companies from which they are contemplating buying insurance. California is entitled to condition the privilege of doing business in the state on the disclosure of information in which California has a legitimate interest.

Were a defense based on lack of control over requested information a requirement of substantive due process, an insurer could evade *any* kind of state disclosure statute or regulation simply by transferring all relevant documents to an affiliate over which it lacks direct control. Similarly, were a defense premised on foreign law required by due process, state regulatory efforts could be hindered by foreign statutes enacted for the purpose of shielding foreign corporations from routine reporting requirements.

Plaintiffs respond that, public policy notwithstanding, substantive due process requires that they be allowed to raise these defenses. They rely heavily on *Societe Internationale Pour Participations Industrielles et Comerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782–83 & n. 8 (9th Cir.1983); and *In re United States v. Sumitomo Marine & Fire Insurance Co.,* 617 F.2d 1365, 1369 (9th Cir.1980).

However, those cases are easily distinguishable. *Societe Internationale* concerned only "whether Fifth Amendment due process is violated by the striking of a complaint because of a plaintiff's inability, despite good-faith efforts, to comply with a pretrial production order." 357 U.S. at 210, 78 S.Ct. 1087. The Supreme Court made a point to limit its decision to the context of discovery sanctions:[13] "We do not say that this ruling would apply to every situation where a party is restricted by law from producing documents over which it is otherwise shown to have control." *Id.* at 205–06, 78 S.Ct. 1087. In *Sumitomo*, this court *affirmed* a discovery sanction tantamount to dismissal even though the government-plaintiff was unable to comply with the district court's discovery orders due to "serious understaffing" rather than bad faith. 617 F.2d at 1369–70. Finally, *Falstaff* dealt with sanctions arising in the context of criminal contempt, where willful disobedience of a court order must be proved beyond a reasonable doubt. 702 F.2d at 782. We have found no decision holding that privacy protections under foreign law, or lack of control over information, excuses compliance with disclosure obligations required as a condition for obtaining or retaining a business license.

■ By contrast, other persuasive precedents support the proposition that a statute may be constitutional yet at the same time make no allowance for an "impossibility" defense. *See, e.g., Danfield v.*

*Johns Manville Sales Corp. (In re Asbestos Litigation),* 829 F.2d 1233, 1235, 1244 (3d Cir.1987) (upholding the constitutionality of state law prohibiting defendants from raising an impossibility defense to tort claims); *United States v. City of Hoboken,* 675 F.Supp. 189, 197–98 (D.N.J. 1987) (rejecting the defendant's substantive due process argument "that constitutional principles of fundamental fairness mandate an impossibility defense" to the Clean Water Act); *cf. Hawkins v. Agric. Mktg. Serv.,* 10 F.3d 1125, 1134 (5th Cir. 1993) (holding that a statute did not violate due process even though it mandated revocation of the plaintiff's license in response to behavior in which the plaintiff took no part, and despite the fact that the plaintiff had no opportunity to demonstrate his innocence).

Because a defense based on lack of control over records or on the conflicting demands of foreign law would thwart the legitimate regulatory purposes of HVIRA, we find no violation of substantive due process.

### B. *Procedural Due Process Under HVIRA*

■ Plaintiffs argue that HVIRA is unconstitutional on its face because it makes no provision for a hearing prior to revocation of an insurance company's license. The statute provides that "[t]he Commissioner *shall* suspend the certificate of authority to conduct insurance business in

---

**13.** Courts discussing *Societe Internationale* have interpreted the reach of its due process holding narrowly even in the context of discovery sanctions. *See, e.g., Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1474 (9th Cir.1992) ("Cases since *Societe Internationale,* however, have emphasized that a foreign-law prohibition will not always excuse compliance with a discovery order."); *United States v. Vetco, Inc.,* 691 F.2d 1281, 1287 (9th Cir.1981) ("*Societe Internationale* did not

erect an absolute bar to summons enforcement and contempt sanctions whenever compliance is prohibited by foreign law."); *United States v. Bank of Nova Scotia (In re Grand Jury Proceedings),* 691 F.2d 1384, 1388 (11th Cir.1982) ("[T]he Supreme Court did not erect an absolute bar to sanctions being imposed for noncompliance with summons or subpoenas whenever compliance is prohibited by foreign law.").

the state of any insurer that fails to comply with [HVIRA]." Cal. Ins.Code § 13806 (emphasis added). However, because the statute must be, and in fact is, interpreted to require such a hearing, does not violate procedural due process on its face.

Plaintiffs' licenses to do business in California are protected property interests. *See Bell,* 402 U.S. at 539, 91 S.Ct. 1586 ("Once licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."). The state may not revoke a protected property interest without first providing a meaningful hearing. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Bell,* 402 U.S. at 541–42, 91 S.Ct. 1586.

Because HVIRA does not expressly provide for such a hearing, Plaintiffs assert that it is facially unconstitutional. What this argument fails to recognize is that, under California law, such a hearing must be implied into the statute. The state's administrative procedure act requires the provision of those procedures that are required by the federal or state constitutions. Cal. Gov't Code § 11410.10. Further, the California Supreme Court has established a presumption that hearing requirements should be inferred in a statute like HVIRA "unless the statute expressly provides to the contrary." *Fascination, Inc. v. Hoover,* 39 Cal.2d 260, 246 P.2d 656, 662 (1952).

Thus, when read in the context of other state law, HVIRA requires the Commissioner to hold a hearing before revoking the license of an allegedly noncomplying insurance company. He concedes that this is so. As properly and as actually interpreted, therefore, the statute is not facially unconstitutional for failure expressly to provide for a hearing.

## OTHER CONSTITUTIONAL CLAIMS

In addition to making due process arguments, Plaintiffs claim that HVIRA violates the foreign affairs power of the United States, the Commerce Clause, the Bill of Attainder Clause, the Equal Protection Clause, the Fourth Amendment, and the Contract Clause. None of these arguments provides a persuasive alternative justification for affirming the district court's decision.

### A. *Foreign Affairs Power and Commerce Clause*

■ In response to Plaintiffs' challenges based on the foreign affairs power and the Commerce Clause, we already have held that HVIRA is *facially* constitutional. *Gerling I,* 240 F.3d at 751, 743. We are not persuaded that we erred.

Plaintiffs now argue that, *as applied,* HVIRA runs afoul of these constitutional provisions.[14] As discussed above, California has urged foreign insurers to help their state-licensed affiliates comply with HVIRA, but it has not sought to regulate these foreign insurers directly. That being so, the record contains insufficient evidence to demonstrate that the statute, as applied to Plaintiffs, is unconstitutional under the foreign affairs power or the Commerce Clause.

---

**14.** As Plaintiffs Assicurazioni Generali, American Insurance Association, and American Reinsurance Company candidly admit, "[i]nsur-

ers ask the Court to *reconsider* its holdings on their foreign affairs power and Foreign Commerce Clause claims." (Emphasis added.)

## B. Bill of Attainder Clause

■ Next, Plaintiffs argue that HVIRA constitutes a bill of attainder because the statute seeks to punish a specific person or group of persons for past conduct without a judicial trial. *See* U.S. Const. art. I, § 10, cl. 1. We disagree.

■ "Three requirements must be met to establish a violation of the bill of attainder clause: '[S]pecification of the affected persons, punishment, and lack of a judicial trial.'" *United States v. Munsterman*, 177 F.3d 1139, 1141 (9th Cir.1999) (quoting *Selective Serv. Sys. v. Minn. Pub. Interest Research Group*, 468 U.S. 841, 847, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984)). Assuming—without deciding—that HVIRA meets the first and third elements, it fails to meet the second.

We consider three factors when determining whether "a statute inflicts punishment that implicates the Bill of Attainder Clause." *Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 728 (9th Cir.1992). We ask "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a[n] . . . intent to punish.'" *Id.* (quoting *Selective Serv. Sys.*, 468 U.S. at 852, 104 S.Ct. 3348).

First, the statute does not fall within the historical meaning of legislative punishment. The ultimate sanction available to the Commissioner, suspension of an insurer's license to do business, may be such a punishment. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 474–75, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (noting that legislative punishment includes "barring

designated individuals or groups from participation in specified employments or vocations"); *Selective Serv. Sys.*, 468 U.S. at 852, 104 S.Ct. 3348 ("[T]he list of punishments forbidden by the Bill of Attainder Clause has expanded to include legislative bars to participation by individuals or groups in specific employments or professions."). Even if it is, however, suspension can occur only after a California insurer fails to comply with the statutory demand for information; that is, the statute imposes a sanction on the basis of an insurer's future conduct. Generally, a statute that leaves open the possibility of compliance, and thus avoidance of punishment, does not fall within the historical meaning of legislative punishment. *See id.* at 853, 104 S.Ct. 3348 (upholding a statute denying educational funding to students who failed to register for the draft, in part because the statute allowed students to qualify for aid after properly registering).

Second, as discussed above, HVIRA furthers nonpunitive legislative purposes: providing data to Holocaust victims and their families about potentially valid claims, protecting California citizens from insurance companies that have a history of refusing claims or refusing to disclose information, and telling California citizens about the character of the family of insurance companies from which they are contemplating buying insurance.

Third, the legislative record does not evince an intent to punish foreign insurance companies or their California-licensed affiliates. As even Plaintiffs concede, the text of the statute and its legislative history demonstrate that the statute was subjectively intended as a means of facilitating payment of Holocaust-era policies.[15] Be-

---

**15.** The other legitimate purposes that we have discussed above, to the extent that they are reflected in the legislative record, likewise involve no intent to punish insurers.

ing asked to account for potentially valid insurance claims is not punishment, even if it proves embarrassing to some insurers. Nowhere in the statute's history does the California legislature express a desire to "punish" California insurers or their foreign affiliates. Because HVIRA is not a "punishment," it is not an unconstitutional bill of attainder.

### C. *Contract Clause*

■ Plaintiffs assert that HVIRA violates the Contract Clause by attempting to modify the express terms of European insurance policies. *See* U.S. Const. art. I, § 10, cl. 1. By doing so, they argue, HVIRA would substantially impair the rights and responsibilities of parties to private contracts entered into decades ago and having no relation to California. As we have explained, this argument mischaracterizes the nature of the statute and the relevance of its definition of the term "proceeds." HVIRA, as distinct from other California statutes whose constitutionality is *not* at issue here, does not compel payment of any Holocaust-era claim and does not alter the substance of any insurance contract. Accordingly, HVIRA does not violate the Contract Clause.

### D. *Equal Protection Clause*

■ Plaintiffs argue that HVIRA violates equal protection. However, Plaintiffs do not assert that the statute treats them differently as a result of their membership in a protected class. Instead, they claim only that HVIRA imposes weightier reporting burdens on insurance companies that either directly or through related entities sold insurance policies in Europe from 1920 to 1945. In the circumstances, we evaluate the equal protection challenge under the rational basis test. *W. & S. Life Ins. Co. v. State Bd. of Equalization of*

*Cal.,* 451 U.S. 648, 668, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).

In this context, Plaintiffs again urge that the Commissioner can articulate no rational basis sufficient to justify the statute. However, for the reasons discussed above, we disagree. Consequently, the insurers have not demonstrated that HVIRA violates equal protection.

### E. *Fourth Amendment*

■ Finally, Plaintiffs argue that HVIRA violates the Fourth Amendment. Like the equal protection argument, however, this claim is simply a rearticulation of another argument: Because HVIRA purportedly exceeds California's legislative jurisdiction, its investigation into the affairs of European insurance companies is an unconstitutional search. According to Plaintiffs, an investigation exceeds the scope of a governmental agency's investigatory power if it is one that the demanding agency is not authorized to make. They cite in support of this proposition *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

We have no quarrel with the general proposition. But HVIRA does not empower the Commissioner to make disclosure requests that exceed his constitutional authority. Therefore, the statute does not violate the Fourth Amendment in the manner argued.

### ATTORNEY FEES

Plaintiffs assert that the district court abused its discretion by denying their motion for attorney fees. Because the district court improperly concluded that HVIRA was unconstitutional, it also erred in concluding that Plaintiffs were "prevailing parties" for the purposes of 42 U.S.C. § 1988. They are not entitled to fees.

## CONCLUSION

HVIRA is not unconstitutional in any of the particulars argued by Plaintiffs. The district court erred in concluding otherwise.

REVERSED and REMANDED with instructions to vacate the injunction and to grant the Commissioner's motion for summary judgment.